No. 15,603.

PATTON *v.* THE PEOPLE.
(168 P. [2d] 266)

Decided March 18, 1946.

Mr. V. G. Seavy, Mr. Gail L. Ireland, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as defendant or Patton, his companion, C. O. Clark, as Clark, and the deceased, Nova Christy, as Christy.

On a verdict of guilty of driving an automobile while intoxicated and by his negligence and reckless conduct causing the death of Christy, Patton was sentenced to the penitentiary for a term of six to eight years. To review that judgment he prosecutes this writ and specifies 16 alleged errors. Those deserving notice may be thus grouped: 1. Certain testimony was erroneously admitted; 2. certain exhibits were erroneously excluded; 3. the verdict is not supported by the evidence; 4. the motion for a new trial was erroneously overruled.

A brief statement of facts is here essential to an understanding of our conclusions on the first two propo-

sitions and our reasons therefor. It is supported by undisputed testimony, concessions of counsel, such evidence as the jurors were clearly entitled to accept and did accept, and permissible inferences which they must have drawn therefrom.

A broad paved highway, probably second to none in the state in volume of traffic, runs from Denver south to Colorado Springs. From the capital to Littleton is a distance of 10 miles, thence to Sedalia 14, thence to Castle Rock 7, thence to Palmer Lake 19, thence to Monument 3, thence to Colorado Springs 19; a total of 72 miles.

The collision resulting in Christy's death occurred about 6:00 p.m., August 29, 1944, approximately half way between Palmer Lake and Monument, on said highway.

Patton and Clark in the former's 1939 LaSalle sedan, bearing a Denver license plate on the rear, the owner driving, left Denver in the afternoon, bought whiskey on the outskirts of the city and more at Castle Rock, drinking intermittently as they progressed. Shortly before 6:00 p.m. Christy, a resident of Scott City, Kansas, alone in a 1931 Austin roadster, bearing the license plates of that state, drove out of a garage at Monument and started north. At the point above noted these cars collided with the result mentioned. The people contend that at some point between Monument and Colorado Springs, Patton had, intentionally or unconsciously, turned about and was driving north at the time of the crash. Defendant insists that he was still driving south. The fact is material as bearing upon the admissibility of certain testimony.

On the same afternoon one Sillers, an engineer and manufacturer of Dallas, Texas, accompanied by his wife and daughter, was driving from Colorado Springs to Denver; and one Potts, a ranchman of the vicinity, had gone on horseback to bring in his cattle, in doing which he had to traverse an underpass extending north and

south beneath this highway and near the scene of the tragedy.

Sillers and his wife and daughter testified as to their experience with a LaSalle car, going north between Colorado Springs and Monument, occupied by two men and so recklessly and unpredictably driven as to cause them much annoyance. They saw no other such car on that portion of the highway involved, and identified Patton and Clark as the occupants.

■ 1. Counsel for Patton insist that the overruling of their motion to strike this testimony was reversible error. They base this contention on the facts, as they allege, that, admitted distances and time considered, it was a physical impossibility for the LaSalle in question to have been at the places and at the times testified to by the Sillers family. Otherwise they say that evidence of Patton's negligent driving elsewhere than at the time of the collision was inadmissible. We are unable to accept counsel's assumptions. They take as their starting point Patton's time of leaving Denver and from there indulge in what seems to us unjustifiable speculations as to stops, speed, etc. All this we ignore because a much more dependable measure of possibilities presents itself. Our last reliable check on Patton is furnished by a filling station attendant at Castle Rock who says he arrived there "some time after five o'clock." Tested by this, and other evidence, including Patton's, the jury could well conclude that he left Castle Rock at about 5:10. Assuming 6:10 as the moment of the crash Patton had one hour to travel to the point slightly south of the place where Sillers first observed him headed north and back to the point of impact. Sillers says he first saw the LaSalle ahead of him and travelling north "a few miles north of the last buildings and houses in Colorado Springs." Now "a few miles" is very indefinite and since the cause was tried in Colorado Springs doubtless all the jurors well knew that the "buildings and houses" which a stranger might well assume were within the

city are scattered out for several miles north of its actual limits. Assuming that Patton was going north, as the people contend, we have no information as to his rate of speed from Castle Rock to the point where he reversed his course, save the assertions of himself and Clark, and for reasons hereinafter noted we may assume that the jurors gave these little credence. In any event, on the foregoing theory, Patton had at least fifty minutes to travel the requisite fifty miles. Were this all, the facts are, to say the least, sufficiently questionable to forbid any invasion by the court of the province of the jury. When we add to all this the further facts that, so far as the record discloses, the Sillers family were creditable and wholly uninterested and impartial, and that the testimony of the witness Potts, next to be considered, supports them, no shadow of an excuse remains for striking their testimony.

About half a mile south of the point of impact the witness Potts says he saw the Austin pass and shortly thereafter a car of the general description of the LaSalle, carrying a Denver license, occupied by two men, travelling north "at least 60 miles per hour." Next he heard the crash and hurried to the scene. This testimony is attacked because it appears that while here Potts says he *saw* the second car pass, at the coroner's inquest he said he *heard* it. Such discrepancies are of little moment and go solely to credibility.

The principal objection to both the Sillers and Potts testimony is that its only purpose was to support the charge of negligence and recklessness on the part of Patton. It is contended that the method of driving, as observed by these witnesses *prior* to the collision, is no evidence of such conduct *at the time* of the crash. On this point counsel cite a number of authorities supporting them. Since we are unable to approve the reasoning of these cases, and believe they state a minority rule, we do not discuss them. That a drunk man's method of driving an automobile half a mile from a point where

he collides with another machine and kills its occupant is no evidence of negligence, recklessness, or want of care at the time of the collision, appears to us contrary to all human experience. We think the following cases state the better rule and that the evidence of these witnesses was clearly admissible. *State v. Leonard,* 195 N. C. 242, 141 S.E. 736; *Ladd v. State,* 115 Tex. Cr. 355, 27 S. W. (2d) 1098; *State v. Carlson,* 325 Mo. 698, 29 S. W. (2d) 135.

2. Defendant's exhibits 6, 7, 8, 9, 10 and 11 are principally automobile scraps picked up near the scene of the accident one week thereafter. They were offered in connection with testimony as to exactly where and in what condition they were found as evidence of the place and manner in which the collision occurred and in refutation of contrary evidence of the people. It is undisputed that on the evening of August 29, and the morning of the 30th, highway patrolmen, in pursuance of their duty to clear the road, picked up and threw aside, without regard to direction, practically all such debris left by the accident. Add to this the general character and use of the highway and it becomes perfectly apparent that the location of these articles after such a passage of time justifies no inference as to any material fact in issue. The offer was properly rejected. Where offered evidence is of such slight relevancy as to confuse rather than illuminate it should not be admitted, and "the determination of the remoteness of evidence is one for the discretion of the trial court." *State v. Wade,* 96 Conn. 238, 113 Atl. 458.

3. We come now to the principal question in the case, i.e., the sufficiency of the evidence. Ordinarily it would suffice to say that we find the verdict supported, but since counsel for Patton say that all assignments relate to the sufficiency of the evidence to establish his negligence and that it was the proximate cause of the collision, and since it appears to us that they overlook certain rules now firmly embedded in the applicable

law of this state, we feel obliged to more minutely analyze this evidence and restate that law.

The information was filed under section 39, chapter 48, '35 C.S.A., which reads: "Any person while under the influence of intoxicating liquor or of any exhilarating or stupefying drug, who causes the death of another by operating or driving any automobile, motorcycle, or other motor vehicle in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety, shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the state penitentiary for a period of not less than one year nor more than fourteen years."

The information charged that defendant, "While under the influence of intoxicating liquor, did then and there unlawfully and feloniously cause the death of one Nova Christy, by operating and driving an automobile in a reckless, negligent and careless manner, and with a wanton and reckless disregard for human life and safety; * * * ."

The record discloses no objection to any instruction given or refused. That the collision occurred, that as a direct result Christy was killed, that Patton's car was involved, and that at the time its driver was intoxicated, are all admitted. The only scrap of evidence that Christy was in any way at fault comes from the lips of Patton and its questionable character will presently be made to appear. When the cars came to rest both were headed north and the Austin was lying on its right side and on fire. By the roadside some twenty feet north of it its driver lay dying. The LaSalle was standing off the highway with its horn blowing and Patton and Clark sitting in the front seat. The point of contact of the cars clearly appeared to have been between the right front of the LaSalle and the left rear of the Austin. Such was the situation confronting highway patrolmen who promptly appeared on the scene. They noted the condition of the cars, wheel tracks, skid marks, etc.,

and took necessary pictures. All this evidence went to the jury. The patrolmen took Patton and Clark into custody and conveyed them to Colorado Springs where the former was examined by Dr. Baker, the county physician, and incarcerated.

As noted above the intoxication of the occupants of the LaSalle is admitted, but since "intoxication" probably covers every condition from slight inebriation to complete paralysis, it seems essential to note more definitely the particular state at which these men had arrived and the steps of their progress. They purchased a "fifth" of whiskey in Denver and began their drinking shortly out of Littleton. At Castle Rock they bought an additional pint which was never found. They claimed to have spilled some of the "fifth" in their car but no trace of it was discovered there. It was introduced in evidence and is presumably here in the same condition as when they were taken into custody. But a few spoonfuls of liquor remain in the bottle. They admit drinking after leaving Castle Rock. When the patrolmen arrived they were both so drunk they apparently had no knowledge that their horn was stuck and blowing, that there had been a collision, that a car had been wrecked, or that its driver was lying a short distance from them near death. They had to be assisted from their car to that of the patrolmen. Their voices and movements evidenced excessive intoxication. Such is the testimony of a number of witnesses present at the time. Patton charged his condition to injuries received in the collision, but Dr. Baker found nothing of the kind sufficient to account for it. At about 7:00 p.m., at the county jail Patton still carried about him the odor of whiskey, staggered when he walked and denied that there had been an accident. There is no evidence of his having anything to drink in the interval. Further details, which are not wanting in the record, would only darken the picture. In the light of all this the testimony of these men, concerning what occurred at the time of the collision and

shortly prior thereto, would seem to carry little weight and doubtless was given slight consideration by the jurors. That the verdict was overwhelmingly supported seems indisputable when we consider the foregoing in the light of applicable law. If, at the point of collision, Patton was operating his car "with a wanton and reckless disregard of human life and safety" there would seem to be no room for argument that such conduct was not the proximate cause of the death of Christy, and since it is not only overwhelmingly established, but frankly admitted, that he was then "under the influence of intoxicating liquor," it is impossible to say that his violation of the statute was not fairly established beyond a reasonable doubt. If the phrase "willful and wanton" ever required definition or clarification that has long since been attended to. *Millington v. Hiedloff,* 96 Colo. 581, 45 P. (2d) 927; *Clark v. Small,* 80 Colo. 227, 250 Pac. 385.

"One who, sufficiently under the influence of liquor to impair his capacity as a driver, or who has just consumed intoxicants sufficient to speedily reduce him to incapacity, yet sufficiently sober to know he is undertaking a sober man's job, puts himself at the wheel of an automobile and takes the road, is guilty of a willful and wanton disregard of the rights of all persons who ride with him or use the highway he travels." *Foster v. Redding,* 97 Colo. 4, 45 P. (2d) 940. True, the foregoing are civil cases, but these definitions apply equally in criminal cases. *Rinehart v. People,* 105 Colo. 123, 126, 95 P. (2d) 10.

■ 4. A motion for a new trial on the ground of newly discovered evidence was overruled. Such motions are addressed to the sound discretion of the court whose ruling will be reversed only for palpable abuse. 46 C. J., p. 243, §216; *Sebold v. Rieger,* 26 Colo. App. 209, 142 Pac. 201. Such evidence must not be merely cumulative, but such as would probably produce a different result. *McDermott v. Lingquist,* 66 Colo. 88, 179 Pac. 147. Some

of the proposed evidence, as disclosed by the affidavits supporting the motion, relates either to Patton's time of leaving Denver, immaterial in view of what we have heretofore said, and of Patton's purchase of liquor at Castle Rock, which is undisputed. Other portions of it relate to evidence which is merely cumulative, to evidence which diligence could apparently have produced, or to evidence which might relieve defendant from a difficulty encountered during the trial and which timely complaint would have removed. None of it is of serious import and all of it combined would not, in our opinion, change the result one iota. No abuse of discretion is disclosed by the record.

Finding no reversible error the judgment is affirmed.

MR. JUSTICE HILLIARD dissents.