**STATE of Missouri, Respondent,**

v.

**Bob G. DAUGHERTY, Appellant.**

No. 46995.

Supreme Court of Missouri, Division No. 1.

Feb. 9, 1959.

Roy Coyne, Joplin, for appellant.

John M. Dalton, Atty. Gen., J. Burleigh Arnold, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Bob G. Daugherty, hereinafter called defendant, was convicted of manslaughter by culpable negligence under Section 559.070 RSMo 1949, V.A.M.S., and his punishment fixed at two years in the state penitentiary. Inasmuch as he has filed no brief on this appeal we look to the assignments of error contained in his motion for new trial. Prior to considering the contention that the trial court erred in failing to sustain a motion for judgment of acquittal on the ground that the evidence was insufficient to make a submissible case, we should determine the validity of new trial assignment 2 which relates to the admissibility of testimony disclosing the result of a test made of defendant's blood to determine its alcoholic content shortly after an automobile accident which resulted in the instant manslaughter charge.

An automobile driven by defendant collided with one driven by Clarence Bush at an intersection in Joplin about 9:30 p. m. on November 24, 1957, and one of the passengers in the Bush car died about 2:00 p. m., November 25, as a result of injuries sustained in that collision. Following the accident, defendant was conveyed to St. John's Hospital in Joplin and about 1:00 a. m. the following morning 10 c.c. of his

blood were removed from a vein in his arm. without his knowledge or consent. A sergeant of the state highway patrol· was a state's witness for the purpose of disclosing the result of a test made of that blood to determine its alcoholic content. Upon objection by defendant that the blood tested had been obtained without the consent of the defendant and, we assume, the implied objection that defendant was thus being compelled to testify against himself, the state disclosed that it intended to offer state's exhibit 8 which purported to be defendant's written permission to make the blood test. Thereupon, the trial court, out of the hearing of the jury, conducted a voir dire examination as to the voluntariness of defendant's act in signing the purported permission. That document (exhibit 8), on the stationery of St. John's Hospital, Joplin, Missouri, dated November 25, 1957, was as follows: "I, Robert Daugherty, 3414 Pearl, Joplin, Mo. hereby give permission to examine my blood for its alcoholic contents. This blood was taken 11–24–57 by a Technician of St. John's Hospital, at the request of Dr. N. H. Barnett. (Signed) Bob Daugherty. Witness: (Signed) Adrian Meacham."

Adrian Meacham was' a Joplin police· sergeant. He testified that about 10:00 a. m. on the morning of November 25 he visited defendant in a room at St. John's Hospital where he asked for and received a statement as to the accident which had occurred the previous night. He then inquired whether defendant's blood which he told defendant had been taken theretofore might be examined for its alcoholic content and, upon being advised that defendant would sign a .written permission to make such a test on that blood, he obtained exhibit 8 from a technician in the laboratory and returned to defendant's room where defendant signed the permission in the sergeant's· presence. The sergeant's testimony made it clear that he advised the defendant of the purpose for which the blood sample had been taken and the purpose of the examination of that sample. He testified also that defendant seemed entirely rational in his responses to questions and was cooperative and understood what he was talking about, did not appear to be under the influence of drugs, and that he did not complain of pain, but did say that he thought he had sustained a hip injury.

Defendant testified on voir dire examination (he did not testify later within the hearing of the jury) that, while he thought he remembered Sergeant Meacham being in his room, he did not remember signing exhibit 8 and that he had no recollection of any blood being taken from him or of having given his consent thereto, and that he did not remember any conversation with Sergeant Meacham.

■ The trial court admitted the testimony concerning the blood test, ruling that the voluntariness of the waiver was for the determination of the jury. We are of the opinion that the preliminary procedure followed by the trial court and its ruling on the admissibility of the questioned testimony were correct. Clearly, the testimony of the police sergeant as to his conversation with the defendant and his explanation to him concerning the fact of blood having been theretofore taken, the sergeant's requesting and defendant's granting permission to examine that blood for its alcoholic content, and the effect of the exhibit itself, executed by defendant in the presence of the sergeant, disclosing on its face that defendant was giving his permission to test his blood that had theretofore been taken, at the very least made a jury question as to the voluntariness of defendant's act in signing the exhibit. If voluntarily executed, there can be no question but that the exhibit constituted a waiver by defendant of his instant objection that the taking of his blood without his consent, testing it, and admitting testimony of the result of the examination, constituted a violation of his constitutional right not to be compelled to testify against himself. (We should make it clear that we

do not, under the facts of this case, reach or in any wise rule the question of whether the testimony in question would have been admissible over proper objection in the absence of a waiver. Those interested might see Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, State v. Matsinger, Mo., 180 S.W. 856, 857[3], State v Horton, 247 Mo. 657, 153 S.W. 1051, 1053 [2, 3], and State v. Newcomb, 220 Mo. 54, 119 S.W. 405, 409[4].)

Our ruling herein is that state's exhibit 8 constituted a waiver by defendant of any complaint that the blood used for test purposes had been extracted without his consent and constituted express permission to examine that blood for its alcoholic content and, therefore, that the testimony concerning that test was admissible.

▮ We note that although the trial court ruled that the matter of the voluntariness of defendant's execution of state's exhibit 8 was a jury question, that matter was not submitted to the jury. As noted, defendant did not take the stand in the jury's presence and thus defendant's testimony concerning the exhibit was not heard by the jury. In any event, however, the record shows that no request for an instruction on voluntariness was made by defendant, and, in the absence of such a request, defendant may not complain of the trial court's failure to have submitted that question. State v. Francies, Mo., 295 S.W.2d 8, 15[24, 25].

There was evidence from which the jury reasonably could have found the facts to be as they appear in this statement. About 9:30 on Sunday evening, November 24, 1957, a dry clear night, defendant, driving his automobile south on Schifferdecker Avenue, ran into the center of the left side of an automobile being driven east on 13th Street by Clarence Bush, at approximately the center of the intersection of those streets. Each street had a black-top surface and was about 23 feet wide. The approach from all directions to the intersection was unobstructed and, while the approach from the north was slightly downgrade, apparently the intersection itself was approximately level. Defendant approached and went into the intersection at a high rate of speed and failed to stop at a stop sign which was located on Schifferdecker north of 13th for the control of traffic moving, as was defendant, south on Schifferdecker. The automobile being driven by Bush proceeded at 35 miles per hour prior to and at collision time. The force of the collision knocked the Bush car 114 feet southeastwardly from the collision point where it came to rest on its side. Defendant's automobile came to rest about 68 feet east and south of the collision point on the north shoulder of Schifferdecker. Fourteen-months-old James N. Lawson, a passenger in the Bush automobile, died as a result of injuries sustained.

Defendant had visited three different establishments covering the seven-hour period immediately prior to the collision and had, during that time, been drinking 3.2 beer, the exact amount of which was variously estimated but, in so far as specific testimony naming the exact number of bottles disclosed, the total quantity of beer consumed was not great, but the testimony was sufficient to support a reasonable inference that defendant had consumed considerable beer during the seven hours. In any event, the proprietor of the last establishment which defendant visited prior to the collision had roused defendant from a position of head on arms on the table, and the proprietor at that time thought defendant was intoxicated, but at the trial did not know whether defendant had been intoxicated or simply sleepy. Defendant's front-seat passenger, who was with him at all three establishments, had "passed out" upon leaving the last place and remembered nothing until after the collision. She testified that defendant had consumed about the same quantity of beer as had she.

The sergeant of the state highway patrol, who had examined defendant's blood for alcoholic content, testified that it showed .13 per cent of alcohol; that tests had shown that a concentration of .05 per cent of alcohol in one's blood will not influence that person in so far as concerns his ability to drive an automobile; that when the percentage of alcohol in the blood reaches .15 per cent every person is thereby rendered incapable of safely driving an automobile; that a percentage of alcohol in one's blood between .05 per cent and .15 per cent may or may not indicate that the person is intoxicated; that the great majority of persons will show definite signs of intoxication upon the close approach to .15 per cent of alcohol in their blood.

While state's witness Lawson's estimate that defendant's automobile was traveling 75 m.p.h. at the time of the collision was stricken for the reason and under the circumstances which will be hereinafter discussed, that same witness, without objection, testified that his automobile traveled one-tenth of a mile at 35 m.p.h. during the time defendant's car traveled the last two-tenths of a mile to the collision point. So that, if the jury believed that testimony, it could have found that defendant's automobile was traveling 70 m.p.h. at the time of the collision. The jury also reasonably could have found that defendant's automobile approached and entered the intersection at an excessive rate of speed from the force of the collision, demonstrated by pictures in evidence which showed extensive damage to the Bush automobile, and particularly to the left side thereof, and which showed the utter destruction of the front of defendant's Plymouth automobile, as well as from the distance from collision point of both automobiles following the collision.

It would appear, therefore, that a jury reasonably could have found that defendant, under the influence of alcohol and perhaps intoxicated, approached 13th Street at a high and excessive rate of speed; that 13th Street at the place in question was protected by a stop sign; that defendant failed to stop but proceeded at unabated high speed into the intersection and into the center of the left side of an automobile which was proceeding across the intersection at 35 miles per hour. We are of the opinion that the jury reasonably could have found from that evidence that defendant was culpably negligent, i.e., that his negligence was such as indicated his utter indifference for human life, and that defendant knew or should have known that such negligence was likely to endanger human life. We therefore hold that there was substantial evidence to support the conviction. State v. Adams, 359 Mo. 845, 224 S.W.2d 54; State v. Mayabb, Mo., 316 S.W.2d 609, 612, 613.

Assignment 1 in defendant's motion for new trial is that the trial court erred in failing to discharge the jury after having sustained defendant's motion to strike witness Lawson's estimate of defendant's speed. Earl Lawson, a state's witness and the father of James, deceased, was following quite some distance to the rear of the Bush car. He testified that despite his distance away he observed the approach of the two automobiles and their collision and he estimated the speed of defendant's car at 75 m.p.h., both as it approached and when it reached the collision point. When the witness disclosed on cross-examination that he based that estimate solely upon "contact," i.e., the force of the collision, the court, on defendant's motion, struck the witness' estimate. Thereafter, on inquiry as to what testimony had been stricken, the court informed the state's attorney that he had stricken the estimate of 75 m.p.h. And, on redirect, the subject was again opened by the state by attempting to re-examine the basis for the speed estimate the witness had theretofore made on direct. Defendant objected on the ground that the court had theretofore ruled, and the state's attorney indicated that he thought he had the right

to attempt to rehabilitate witness' testimony. After some colloquy, the court sustained defendant's objection. Thereafter, attorney for the state asked whether the court was ruling that he could not ask the witness whether there was anything other than the "collision damage" upon which he based his speed estimate and the court permitted that question without objection by defendant. The witness answered that there was nothing else upon which he based his speed estimate.

■ No motion to discharge the jury was made or other relief sought by defendant at that time. At the close of the state's evidence defendant moved to discharge the jury on the ground that witness Lawson's testimony and the circumstances of the repetition of "75 m.p.h." had so prejudiced defendant that the jury's discharge was the only cure. Without regard to the untimeliness of the motion to discharge and without regard to the fact that, as heretofore pointed out, the witness' testimony was not, as defendant stated in his motion to discharge the jury, the only evidence of defendant's speed, we are of the opinion that the trial court correctly ruled. It seems to us apparent that the repetition of the fact that the trial court had stricken the state's witness' estimate that defendant's car was going 75 m.p.h. was a fact favorable to the defendant, particularly under the circumstances that the state attempted to rehabilitate the witness and get his estimate again in evidence but failed to do so. Be that as it may, however, it is abundantly clear that the trial court's failure to sustain defendant's motion to discharge the jury was not, under the circumstances, an apparent abuse of discretion and thus we do not interfere. State v. McHarness, Mo., 255 S.W.2d 826, 828, 829.

■ Defendant's next new trial assignment is that the trial court erred in failing to instruct the jury that defendant could not be convicted merely because he had been drinking, particularly in view of the fact, says defendant, that the blood test showed the presence of alcohol only to the extent of .13 per cent while the testimony was that defendant was not intoxicated unless the test showed at least .15 per cent. The difficulty with defendant's present position is that the record shows that he did not request that or any other instruction. While the court was required to instruct on the law of the essential features of the case, it was not required to instruct, in the absence of a request, on collateral questions. State v. Hurley, Mo., 251 S.W.2d 617, 621[8]. Instant defendant was not entitled to an instruction that he could not be convicted merely because he had been drinking as part of the law of the case. Thus, whether defendant was entitled to have the jury so instructed is not reviewable on this appeal because of defendant's failure to have requested the court to instruct the jury on the collateral matter in question. State v. Miller, Mo., 234 S.W. 813, 815[4].

Defendant's final new trial assignment is that witness Lawson's estimate of speed (subsequently stricken as noted) and the testimony as to the blood test and its result (which we have held was properly admitted in view of defendant's written waiver) were so prejudicial as to have prevented a fair trial. What we have said heretofore concerning those matters fully disposes of that contention.

We have reviewed those record matters which we examine irrespective of whether they have been properly preserved for review and find no error therein prejudicial to defendant.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.