STATE of Missouri, Respondent,

v.

Donald Paul FEGER, Appellant.

No. 47738.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 12, 1960.

Van Matre & Van Matre, Mexico, for appellant.

John M. Dalton, Atty. Gen., Fred L. Howard, Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Appellant was convicted of manslaughter and his punishment assessed at eight years in the penitentiary. The charge was based on culpable negligence in the operation of an automobile causing a three-car collision and the death of Dorothy Emma Milner. Appellant contends, among other things, that the evidence is insufficient to sustain a conviction for manslaughter.

About six o'clock in the evening of May 18, 1958 appellant joined Jesse Willis and Marjorie Jo Ann Morris at George and Jessie's Cafe in Mexico, Missouri. According to Marjorie Jo they each had a can of 3.2 beer, and then in appellant's automobile with him driving they started to the Knotty Pine Tavern located on Highway 54 about twelve miles east of town. At the eastern edge of Mexico they stopped at the "54 Club" and appellant drank another can of 3.2 beer. On the way to the Knotty Pine, Marjorie Jo noticed that the speedometer registered 100 to 110 miles an hour. Appellant "pulled in" at the Knotty Pine, but they then decided to go to Wellsville, Missouri about fourteen miles away, and on the way appellant drove "around the same speed." At Martinsburg (about six miles past the Knotty Pine) appellant stopped and Jesse and appellant each had another can of 3.2 beer. In Wellsville "just before sunset" appellant slid into the ditch while rounding a curve and had to obtain help from a passing motorist to get his automobile back on the road. The motorist testified that he could tell that appellant had been

drinking but that he "wasn't what you would call drunk or anything like that." Appellant then went to the V.F.W. Club, and drank "about half" of a bottle of 3.2 beer. After stopping at the Dew Drop Inn, where appellant offered to buy a "couple of beers" for the motorist who had previously helped him get out of the ditch, appellant and his two companions started back toward Mexico. Jesse requested that he be permitted to drive because appellant "was driving a little too fast." Appellant at first declined but when they got out on the highway he permitted Jesse to drive until they reached the Knotty Pine. Appellant told Jesse he "wasn't driving it [the automobile] quite fast enough." At the Knotty Pine Jesse and Marjorie Jo got out of the automobile and appellant "drove out onto the highway sort of rapidly" and started toward Mexico.

About two or three miles down the highway, while driving west toward Mexico at 85 to 90 miles an hour, appellant passed an automobile being operated by Walter Harrison. In passing he cut back into the right lane and ran off the right shoulder of the highway. An automobile was approaching from the west and Mr. Harrison "jerked" his automobile to the right to provide more clearance. Appellant continued without reducing his speed and passed a pickup truck operated by Harry Cowley, and in doing so he "pulled back into the right-hand lane * * * and then went off on the right-hand shoulder and pulled back across into the left-hand lane and drove a couple of cars [which were proceeding eastward] off the road." He then drove on and "was back and forth across the road, weaving." When appellant was about 200 yards ahead of him, Mr. Cowley saw appellant's automobile "silhouetted by headlights [of an approaching automobile] and he'd pull back and then I saw a cloud of dust and then the headlights went out." Mr. Harrision saw "the brake red lights come on" on defendant's automobile while it was on the south side of the highway (the eastbound lane), and then "a cloud of dust or smoke in the outline of car

lights that was travelling east." From all the evidence the jury could find that appellant struck the rear of a Ford automobile proceeding west ahead of him deflecting it into the eastbound lane, and that the Ford and a Lincoln automobile proceeding eastward then collided head-on. Appellant's automobile ended up in the ditch on the north side of the highway and its front end was extensively damaged. The Ford ended up on the highway facing west in the south or eastbound lane and was badly damaged both in front and in the back. The driver of the Ford, Mr. Montie Milner, and the passenger, Dorothy Emma Milner, his wife, were killed instantly. The Lincoln automobile was in the ditch to the south of the highway, and was badly damaged on the front end and left front side. The Lincoln automobile immediately caught fire and burned quickly. After the accident, in the north or westbound lane of the highway there was a pile of debris consisting of "broken parts of cars, such as chrome pieces, taillight pieces of red glass and forreign matter." The Milner Ford was the only automobile which had damage to and breakage of the taillights. There were "gouged out" places and "scrapings" on the highway surface. Extending westward from this area of debris there were "marks" for about 60 feet. The marks then "divided up" and a set of marks "veered off to the north" to appellant's Chrysler in the north ditch. Another set of marks led "in a snakelike direction" to a second pile of debris located in the eastbound traffic lane and 222 feet west of the first area of debris. This second pile of debris consisted of dirt, grease, gasoline and metal. From this area of debris the marks which had approached in a "snakelike" manner "went back in an easterly direction several feet [53 feet] to where the [Milner] Ford came to rest." The Lincoln was "directly opposite the Ford" to the south, and there were marks from the second area of debris leading to the Lincoln. Appellant told a highway patrolman at the scene that "These cars ran together and then I hit one of them."

There was considerable evidence as to whether or not appellant was drunk. There was testimony that his walk "was unsteady;" that he staggered and crossed his feet when he walked; that his eyes were not completely open; and that alcohol could be smelled on his breath. Walter Harrison testified that he could not say whether appellant was or was not intoxicated. Appellant was taken to the hospital at Mexico, and while the laboratory technician was taking X rays he repeatedly fell asleep and did not respond to her instructions. She could smell alcohol on appellant, but it was her opinion that while he was not drunk he was under the influence of alcoholic beverages. Appellant did not testify, and his evidence pertained primarily to the question of his intoxication.

In six of his twenty-six points appellant contends the trial court erred in failing to direct a verdict of acquittal. He assigns as reasons therefor that (1) there was no "direct evidence" as to any act on the part of appellant which would prove that he caused or contributed to cause the accident; (2) all the evidence "failed as a matter of law to prove beyond a reasonable doubt" that appellant committed the crime of manslaughter because the state's case was "founded on an inference which was based on another inference, with neither inference being proven by direct evidence;" (3) the State failed to establish the corpus delicti; and (4) the State failed to establish the criminal agency of appellant because there was no evidence that (a) the tire marks and debris on the pavement were from the cars in the accident or that the marks and debris were not there before the accident; (b) of the manner of operation and the direction of travel of the Milner Ford automobile; (c) of any act of negligence on the part of appellant "in relation to the collision" of appellant's automobile and the Milner Ford; (d) that Dorothy Emma Milner was alive at the time of the collision; or (e) that the death did not result from an unavoidable accident.

■ In a prosecution for homicide the State has the burden to establish the guilt of the defendant and every element of the offense charged, including the corpus delicti. State v. Colbert, Mo.Sup., 226 S.W.2d 685. The corpus delicti consists of two elements; the death of a human being and the criminal agency of another in causing the death. State v. Meidle, Mo.Sup., 202 S.W.2d 79; State v. Colbert, supra. "The rule is well established * * * that negligence to be deemed culpable within the meaning of the statute and, therefore, criminal, is something more than ordinary, common-law, or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life." State v. Schneiders, 345 Mo. 899, 137 S.W.2d 439; State v. Morris, Mo.Sup., 307 S.W.2d 667; State v. Ruffin, 344 Mo. 301, 126 S.W. 2d 218. On the other hand, in the Ruffin case it was said that a defendant could not be convicted of manslaughter merely because he had been drinking, and that the doctrine of res ipsa loquitur could not be applied to authorize a conviction of manslaughter because an unexplained accident occurred.

■ In this case there was direct evidence that appellant started out on a trip operating his automobile on the public highways while drinking (whether or not he was drunk within the meaning of that term as understood by the witnesses) at speeds in the neighborhood of 100 miles per hour; that his automobile slid into the ditch at one time and that his passenger requested permission to drive because appellant was driving too fast; that he again took over the operation of his automobile, and drove at an excessive speed after dark in a reckless and dangerous manner in that he did not have sufficient control of his automobile to pass other automobiles properly and without endangering others on the highway; and that he continued to drive in such reckless manner to the point of the collision which resulted in the death of Mrs. Milner.

There was also direct evidence concerning the location of the marks and piles of debris on the highway, the location of the automobiles after the collision, and the damage thereto from which the jury could reasonably infer that the appellant caused or permitted his automobile to strike the rear of the Milner Ford and deflect it into the eastbound traffic lane and into a head-on collision with the Lincoln automobile. The State was not bound by the self-serving statements allegedly made by appellant at the scene of the accident to the effect that the Ford and Lincoln first collided and that his automobile then struck one of those automobiles. Appellant's "inference on an inference" argument, if such a rule actually exists as contended, misinterprets the rule that several inferences may properly be drawn from the same proved facts, if each inference is supported thereby. State v. Ring, 346 Mo. 290, 141 S.W.2d 57. We conclude that in this case the jury reasonably could find that the conduct and acts of appellant were such as indicated an utter indifference for human life, and that he knew or should have known that such conduct endangered human life, and that there was substantial evidence that appellant was guilty of culpable negligence in the operation of his automobile at the time and place of the occurrence which resulted in the death of Mrs. Milner. Compare the factual situations and the rulings in State v. Morris, supra; State v. Simler, 350 Mo. 646, 167 S.W.2d 376; State v. Duncan, Mo.Sup., 316 S.W.2d 613; and State v. Daugherty, Mo.Sup., 320 S.W.2d 586.

Appellant contends, however, that there was no evidence that Dorothy Emma Milner was alive before the accident. He relies on State v. Simler, supra [350 Mo. 646, 167 S.W.2d 383], wherein it was held that although the culpable negligence was found to exist, there was "no direct proof whatever of the cause of deceased's death." However, in that case it was pointed out that no evidence had been introduced to show what injuries the deceased had sustained as the result of the collision or that they were fatal. In contrast, the evidence in this case established that deceased's son and daughter were with her until about five o'clock in the afternoon; she was then in good health and she and Mr. Milner were going to take a "joy ride towards Mexico;" the accident occurred about eight o'clock between the deceased's home and Mexico; Doctor William H. Jolly, a medical physician and the coroner of Audrain County, examined the body of Mrs. Milner at the scene of the accident and she was dead; and without detailing here the extensive injuries sustained by Mrs. Milner it was the opinion of the coroner that she died from "crushing injuries to the chest and a broken neck."

Appellant also argues that the evidence does not show that Mrs. Milner's death was not the result of "accidentally falling from the Ford or that the Lincoln did not strike the Ford first, immediately killing Mrs. Milner and thereafter driving the Ford into defendant's car." The persons who testified concerning the marks and debris on the highway saw them there immediately after the collision, and such testimony is proper. State v. Poucher, Mo. App., 303 S.W.2d 197; McCrary v. Ogden, Mo.Sup., 267 S.W.2d 670; Lawrence v. Commonwealth of Virginia, 181 Va. 582, 26 S.E.2d 54; State v. McMurray, 47 Wash. 2d 128, 286 P.2d 684. We have previously outlined what the evidence shows concerning the course of travel of the three automobiles as reasonably may be inferred from the markings and the areas of debris on the highway. It is not necessary that the State present affirmative evidence that the debris and marks were not on the highway before the accident and that the deceased did not accidentally fall out of the automobile before the collision. The reasonable inference from the facts is that appellant's automobile struck the rear of the Milner Ford and deflected it into the path of the Lincoln, and that as a result of these collisions Mrs. Milner was killed. Evidence from which such inferences may

reasonably be drawn is all that is required. The trial court did not err in refusing appellant's motion for judgment of acquittal.

■ Instruction 3 given on behalf of the State hypothesized certain factual matters and then provided that "if you find and believe from all of the evidence * * * that while the defendant * * * was so driving, operating and in charge and control of said motor vehicle, * * * he feloniously, carelessly, recklessly, and with culpable negligence, drove, propelled and forced said motor vehicle with great force and violence against and into collision with another certain motor vehicle upon said highway, wherein Dorothy Emma Milner was a passenger and occupant, *if you so find*, thereby causing the said Dorothy Emma Milner to be thrown from said motor vehicle, in which she was a passenger and occupant, to the ground and pavement, *if you so find*, and thereby giving to her, * * *." (Italics added.) Appellant contends that the instruction "assumes the fact that Dorothy Emma Milner was a passenger in the Ford automobile." Setting out the language of the instruction is sufficient to demonstrate that the contention is without merit. This was a fact the jury was required to find, and such finding could reasonably be inferred from the evidence.

Three of appellant's points pertain to matters not mentioned in the motion for new trial. Appellant seeks to invoke Supreme Court Rule 27.20, V.A.M.R., for appellate review.

■ On voir dire examination counsel for appellant stated to the panel that he wanted to ask an "extremely important question to the defendant." He then related that in the course of the trial it would be defense counsels' duty "in order to properly and adequately represent our client" to make objections and that counsel would be "remiss in our duties if we did not do so." He continued as follows: "Sometimes I feel that jurors feel that those objections are needless. Believe me, we only make them when we feel we are required to do so. If we find, at any time, we are required to object to any facts from time to time, would that prejudice you in any way against the defendant or his attorneys in this case? I take it by your silence that you would not and you would understand we were doing our duty when we do make those objections." The prosecuting attorney then objected "to that statement * * * that they are only doing their duty when sometimes objections are made just for obstruction purposes." Appellant's counsel took "exception to that remark," and the trial court said, "Well, go ahead with your examination." No specific relief was requested. Appellant now asserts that "manifest injustice and a miscarriage of justice resulted" from this incident. He cites State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, and contends that the trial court had the duty "to take appropriate action to meet the situation thus called into being." Obviously, this incident did not call for any action by the trial court on its own initiative, and it did not constitute plain error affecting substantial rights of appellant within the meaning of Supreme Court Rule 27.20.

■ The second matter pertains to an answer of a highway patrolman on cross-examination. The patrolman testified that in his opinion appellant was under the influence of alcohol. On cross-examination he stated that his opinion was based on the way he walked "and the manner in which he acted." Appellant's counsel then asked, "Well, how did he act?" The answer was: "Well, he was sullen; there was no appearance of remorse." Appellant objected to the statement that "there was no appearance of remorse," which was overruled by the trial court with the comment, "You asked him the question." Appellant cites no authority to the effect that this incident was prejudicial to him if properly preserved for review. The incident obviously provides no basis for invoking Supreme Court Rule 27.20.

The third incident pertains to a comment of the trial judge. Jesse had testified concerning the events that had occurred from the time he had met appellant until they had gone to the Dew Drop Inn. With the obvious intent of declaring a recess the trial court said to counsel: "We have got him at Wellsville and now at the Dew Drop Inn. It is well to remember where we are." A noon recess was then announced. No objection was made to the above comment and no request was made for any relief. Appellant now says an objection would have emphasized the prejudicial effects of this remark, and it was so improper that it could not have been corrected by an instruction to the jury. We consider this incident to be trivial. It affords no basis for invoking Supreme Court Rule 27.20.

Appellant complains that the prosecuting attorney referred to several facts in his opening statement which he intended to prove and then offered no evidence to prove them. In six separate points in his brief appellant asserts prejudicial error resulted from the following statements by the prosecuting attorney: (1) While appellant was at the V.F.W. Club and the Dew Drop Inn he was loud and boisterous, and he drank beer at the Dew Drop Inn; (2) he declared at one place he was going to get good and drunk and was going to let his car breathe hard on the way north; (3) appellant "had been out there [Knotty Pine] before drinking;" (4) at the time of the accident the Milner Ford was "driving along in an ordinary manner," and when appellant approached from the rear and started to go by "a Lincoln car [was] going east and he swings back to the right-hand lane, butts in—crashes into the rear end of this Ford;" (5) when Jesse Willis started driving appellant's automobile he "began driving at an ordinary speed and continued to do so" and appellant was "nagging at him" and said "if you can't do any better than this I will take her into Mexico;" and (6) when appellant drove away from the Knotty Pine after

Jesse and Marjorie Jo got out he "skidded his car around, ran over to the eastbound lane and then turned back into his right-hand lane or westbound lane." Appellant also charges that the above statements were made "with the obvious purpose of creating prejudice against the defendant from the start of the trial with no bona fide intention of proving the truth thereof and for the purpose of bolstering the charge also made in the opening statement * * * 'that on Sunday afternoon Don Feger was out on a drinking spree, a beer drinking spree.' "

The opening statement has the office of advising the jury of the facts which the State expects to prove. It has the further purpose of informing a defendant of the contemplated course of the prosecution and of the facts relied upon so as fairly to enable a defendant to meet the charge preferred against him. State v. Deppe, 286 S.W.2d 776, 779. As a general rule the opening statement "should be brief and general, rather than detailed, and should be confined to statements based on facts which can be proved and should not include facts which are plainly inadmissible." 23 C.J.S. Criminal Law § 1085. Perhaps the opening statement in this case went into unnecessary detail, but it is a fine distinction where a full outline of the facts ends and where an unnecessarily detailed statement begins. Therefore it is properly and wisely the rule that the "scope and extent [of the opening statement] is largely within the discretion of the trial court." 23 C.J.S. Criminal Law § 1085, p. 527.

We do not agree with appellant that there was no evidence to support any of the above mentioned statements of fact made in the opening statement. For example, there was substantial evidence from which it could reasonably be inferred that the collision occurred exactly the way the prosecuting attorney stated. There was, however, no evidence of some of the precise acts or statements attributed to appellant, and appellant predicates his charge of bad faith upon the fact that the evidence was

not produced. This alone, however, is not enough. State v. Rasco, 239 Mo. 535, 144 S.W. 449, 462. There is nothing in the record from which it may be inferred that when the prosecuting attorney made the statements he did not intend to produce such testimony. He may have had reasonable grounds to believe that the witnesses would expressly so testify, and trial courts must necessarily rely upon the good faith of counsel in making their opening statements to the jury as to the material facts they intend to prove. State v. Flinn, Mo. Sup., 96 S.W.2d 506, 509; State v. Beaghler, Mo.Sup., 18 S.W.2d 423, 427. In State v. Levy, 262 Mo. 181, 170 S.W. 1114, it was pointed out that failure of proof of statements of fact made in the opening statement is really injurious to the State rather than to the defendant. Such failure is fair comment in the jury argument, and we note that appellant's counsel did not pass up the opportunity in this case. The various points pertaining to this contention are without merit.

 In seven separate points appellant asserts prejudicial error resulted from the introduction of evidence over his objection of events and acts of appellant which he contends were too remote to have any evidentiary value and were not relevant or material to the accident. The following evidence is challenged: (1) that appellant drove 100 to 110 miles an hour while traveling to the Knotty Pine and that he drove at the same rate to Martinsburg and Wellsville; (2) that his automobile skidded into a ditch at Wellsville and he had to obtain help to get the automobile back onto the highway; (3) that appellant drove his automobile rapidly onto the highway at the Knotty Pine after Marjorie Jo and Jesse got out; (4) and that appellant passed the Harrison automobile and the Cowley truck in the manner previously stated.

An essential element of the offense of which appellant was charged consisted of the state of mind; that is, negligent conduct of such reckless character as to indicate "utter indifference for human life." State v. Mayabb, Mo.Sup., 316 S.W.2d 609, 613. Only rarely if ever is there direct proof of one's state of mind. This essential element may, however, be established from facts and circumstances from which it reasonably may be inferred that the conduct of the accused was actuated by a reckless disregard for the consequences of his negligent acts and an utter indifference for human life. State v. Duncan, Mo.Sup., 316 S.W.2d 613. The conduct of appellant shown by the evidence objected to tended to establish a series of connected negligent acts constituting a general course of action which had a direct bearing on his attitude and state of mind evidencing gross and culpable negligence, and therefore the evidence was relevant to an essential element of the State's case. Wharton's Criminal Evidence, 12th ed., § 148; 31 C.J.S. Evidence § 158. In addition, as a part of the proof that at the time of the collision appellant was guilty of culpable negligence, the State sought to show that appellant was under the influence of alcohol. While it has been said the fact alone that a driver has been drinking is not sufficient to support a verdict of culpable negligence, it is a matter which may be taken into consideration by the jury. "[W]hen it is charged that one of the parties was drunk or was under the influence of intoxicating liquors at the time an accident occurred, the court may admit testimony as to the manner in which such party was driving his motor vehicle a substantial distance from the place of the accident for the purpose of substantiating the charge." Wharton's Criminal Evidence, 12th ed., § 149.1, 1960 pocket parts, citing Rolls v. State, 35 Ala.App. 283, 46 So.2d 8; Patton v. People, 114 Colo. 534, 168 P.2d 266; State v. Neville, 228 Iowa 1225, 293 N.W. 560, and other cases. Whether such evidence, even though relevant, is inadmissible because it is too remote to be material is a matter resting largely in the sound discretion of the trial judge. State v. White, 339 Mo. 1019, 99 S.W.2d 72, 74; 22 C.J.S. Criminal Law § 638. Ordinarily remote-

ness affects the weight rather than the admissibility of evidence unless it is so remote to be entirely without materiality, and this was not the situation here. State v. Birch, 183 Wash. 670, 49 P.2d 921; Wharton's Criminal Evidence, 12th ed., § 149. From the time appellant left Mexico he started the incident or the connected course of events which culminated in the death of Mrs. Milner, and evidence of his method of driving during the entire course of events was relevant and material to the issue of whether the accident resulted from ordinary negligence on his part or from his culpable negligence. Bell v. Commonwealth, 170 Va. 597, 195 S.E. 675.

Appellant cites and relies on several civil cases where the issue was the negligence of the defendant in causing a collision of automobiles. The issue of criminal intent, a state of mind, was not involved. Those cases are not controlling in this proceeding. In criminal cases, where the charge is of the nature here, and in which the issues have been recognized and properly considered, evidence of the conduct of the defendant at times prior to and removed from the place of the accident has been held to be admissible when the conduct reasonably tends to establish a continuing course of action evidencing a state of mind of utter disregard for human life. See, for example, State v. Carlsten, 17 Wash.2d 573, 136 P.2d 183 (eight miles from place of accident); State v. Birch, 183 Wash. 670, 49 P.2d 921 (eleven miles from place of accident); People v. Costa, 40 Cal.2d 160, 252 P.2d 1 (one-half hour before accident); Beeman v. State, 232 Ind. 683, 115 N.E.2d 919 (one to one and a half miles from accident); Commonwealth v. Smith, 178 Pa. Super. 251, 115 A.2d 782 (several miles from place of accident); and the numerous cases cited in § 149.1 of the 1960 pocket parts to Wharton's Criminal Evidence, 12th ed. See also, State v. Simler, 350 Mo. 646, 167 S.W.2d 376, where on the issue of culpable negligence in a manslaughter charge evidence was admitted that for a five-hour period before the accident defendant drank beer and operated his automobile in a reckless manner. We find no error in the admission of the evidence objected to and appellant's points referring thereto are without merit.

■ Appellant next contends that prejudicial error resulted from the introduction in evidence of State's exhibit 2 consisting of a photograph of the Lincoln automobile showing the badly burned condition of the interior of the automobile. The objection of appellant is directed to the fact that the black and white photograph shows a round object in the Lincoln automobile which he says is "the burned and charred head of a corpse other than Dorothy Emma Milner." Whether or not this is true is not readily apparent from an examination of the photograph, but the features shown are not inconsistent with that conclusion. The circumstances of the admission into evidence of exhibit 2 are as follows: The State called a photographer as a witness who identified exhibit 3, a photograph taken by him of the Lincoln automobile while it was burning at the place of the collision. The witness then stated that he took the photograph marked exhibit 2, and when he was asked what it was appellant objected because "this shows a body in the Lincoln." The prosecuting attorney stated that he had not yet offered the photograph in evidence, but wanted it identified and it would then be offered. Counsel for appellant stated that the witness could identify the photograph as being of the Lincoln automobile and that he had no objection to that, but "he has no right to identify the body in the Lincoln." The witness then stated that the exhibit was a photograph of the Lincoln automobile. No mention was made by the witness or any one else in the presence of the jury concerning the identity of the round object in the automobile. When exhibit 2, along with other exhibits consisting of photographs, were offered in evidence counsel for appellant objected out of the presence of the jury "for the reason that his sole purpose is to inflame the jury since it is a photograph of the deceased corpse in the Lincoln

automobile, which is not involved in this manslaughter case and particularly due to the fact there has been no testimony in this case whatsoever that there were any deaths or corpses in that Lincoln automobile and we object because it couldn't have any bearing whatever on this case." It is therefore evident that there was no objection to the introduction of exhibit 2 as a photograph of the Lincoln car, but only because counsel contended that the unidentified object shown in the automobile was the head of a deceased person, a fact not readily discernible by looking at the photograph.

It has repeatedly been held that demonstrative evidence in the form of photographs is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue, State v. Moore, Mo.Sup., 303 S.W.2d 60, and the admission of such evidence is largely within the discretion of the trial court. The photograph, insofar as it showed the Lincoln automobile only, was material as tending to corroborate the testimony of the State's witnesses concerning the force of the collision and the condition of the automobile thereafter. This was a three-car collision, and undoubtedly the collision that resulted in the death of Mrs. Milner was that between the Ford and the Lincoln which the State contended was caused by appellant's culpable negligence. On this appeal appellant contends that there is no evidence that Mrs. Milner was alive before the collision or that her death resulted from his criminal agency. The State had to anticipate all contentions of appellant in presenting its proof, and it was material to show facts from which the jury could infer that Mrs. Milner died as the result of the collision. The condition of the automobiles after a collision is material to the issue of whether the collision could or did result in death. Appellant's argument establishes the materiality of the photograph. Since the object shown in the photograph was not identified, the basic question is whether the photograph, standing alone with no explanation of it except that it is a photograph of the Lincoln automobile, is so gruesome and inflammatory that the trial judge committed reversible error in admitting it. We have no hesitancy in holding that it is not, and in doing so, in addition to the fact that the object is not readily identifiable as a human head, we have in mind the rule that if an exhibit satisfies the requirements for the admission of demonstrative evidence, it is not sufficient cause for rejection that the sight of it would tend to agitate the feelings of the jurors. State v. Moore, supra; State v. Laspy, Mo.Sup., 298 S.W.2d 357.

The undertaker, Mr. Charles Arnold, was asked whether he had any difficulty in getting the body of Mr. Milner out of the Ford automobile. After a general objection the trial judge inquired if the purpose was to show the condition of the automobile, and the prosecuting attorney stated it was. The undertaker was permitted to testify that he did have such difficulty because the front seat of the automobile was thrown against the dashboard. No error resulted from this. It was otherwise established without objection that Mr. Milner was killed in the collision, and it is proper for the State to show the complete picture of what happened even though such evidence reveals that other deaths occurred. State v. Varner, Mo.Sup., 329 S.W.2d 623. The force of the collision as revealed by the conditions of the automobile thereafter was material. State v. Daugherty, Mo.Sup., 320 S.W.2d 586.

Appellant next contends that prejudicial error resulted when the trial court "permitted the State, over defendant's objections, to argue to the jury * * * that the defendant may have been drinking other intoxicants than the 3 or 3½ cans of 3.2 beer shown in evidence * * *." In oral argument appellant's counsel told the jury that in the opening statement the prosecuting attorney had said that he would prove

appellant had been out on a drinking spree, but that the evidence showed that he had "but three bottles of 3.2 beer over a period of about three hours." In the closing argument the prosecuting attorney said: "We don't know how long he had been drinking that day or how many drinks he had—." Appellant's objection that "there is absolutely no evidence of that" was overruled. The prosecuting attorney then continued: "Try to say he has had only three beers! Why, his actions and all, gentlemen, you have a right to infer from those actions whether or not he had been drinking and whether or not he was under the influence of alcohol." No further objection was made. There was substantial evidence from which a jury could reasonably infer that appellant was intoxicated and under the influence of alcohol, and if appellant could argue that he was not intoxicated because the State had not shown he drank more than three bottles of 3.2 beer then the prosecuting attorney could argue that the evidence concerning his actions authorized an inference that he had had more than that to drink. The prosecutor has the right to draw any inference from the evidence which he in good faith believes to be justified. State v. Murray, 316 Mo. 31, 292 S.W. 434, 438; State v. Francis, 330 Mo. 1205, 52 S.W.2d 552.

We find no error prejudicial to the appellant in this case. Therefore, the judgment is affirmed and the sentence pronounced shall be executed.

BOHLING, C., concurs.

BARRETT, C., dissents.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.