**STATE of Missouri, Respondent,**

v.

**Ray Lee COATES, Appellant.**

No. 18368.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 1993.

Robert G. Russell, Wesner, Kempton, Russell and Dominique, Sedalia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

About 7:29 p.m., May 14, 1991, Defendant, Ray Lee Coates, was driving a 1985 Pontiac Sunbird station wagon north on County Road 222 in Benton County. Debra[1] Jean Turner, age 35, the only other occupant, was seated on the passenger side in front. Approximately a mile north of Warsaw, the vehicle crossed into the southbound (west) lane, left the road and overturned, killing Ms. Turner.

Defendant was charged with the class C felony of assault in the second degree, in violation of § 565.060, RSMo 1986. That section reads, in pertinent part:

1. A person commits the crime of assault in the second degree if he:

. . . .

(3) Recklessly causes serious physical injury to another person

. . . .

A jury found Defendant guilty and assessed punishment at one year's imprisonment in jail. The trial court entered judgment per the verdict. Defendant appeals, presenting two claims of error: (1) the State failed to make a submissible case on the element of recklessness, and (2) the information stated no offense.

In addressing Defendant's first point, we view the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the verdict, and

---

1. This name is spelled "Deborah" in the information and "Debra" in the transcript.

disregard contrary evidence and inferences. *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Our function is not to weigh the evidence, but to determine whether there was sufficient evidence from which reasonable persons could have found Defendant guilty as charged. *Feltrop,* 803 S.W.2d at 11.

■ So viewed, the evidence shows there is a "four-way stop" at the intersection of Van Buren and Jackson Streets in Warsaw. Shortly before the fatal occurrence, Sharon Hoff, a friend of Ms. Turner, saw Defendant driving on Jackson Street, accompanied by Ms. Turner. Defendant drove through the Van Buren intersection without slowing down at the stop sign. Two or three minutes later, Ms. Hoff saw Defendant's vehicle going the opposite direction on Jackson. It turned right on Benton Street without slowing down or signaling, "threw gravel everywhere," and nearly hit a parked car.

At the intersection of Polk Street and Highway 7 in Warsaw there are stop signs for traffic each way on Polk. Constance Baker, who resides on Polk Street about a mile from the crash site, saw Defendant driving on Polk near her home. She testified: "[T]he brakes slammed on. It skidded for a few feet and then it lunged forward." The speed limit on Polk is 25 miles per hour. According to Ms. Baker, Defendant was going "[m]uch faster" than 35. Defendant's vehicle went through the intersection at Highway 7—a "[v]ery busy highway"—without slowing down at the stop sign. A few minutes later, Ms. Baker saw an ambulance go past her home. She followed it to the crash site and saw Defendant's vehicle there.

Jolene Grobe and her husband, Lynn, also reside on Polk Street in Warsaw. Ms. Turner lived nearby on Polk. Jolene heard an automobile "making a lot of noise" coming down Polk. The vehicle "came to a screeching halt." Jolene went to her front door and saw an automobile in Ms. Turner's driveway. Defendant was the driver. Jolene heard "a lot of loud talking, children crying."

Jolene testified, "[Defendant] zipped down the driveway and into the street." According to Jolene, Defendant's vehicle was swerving "all over the road." Jolene called to Defendant, "Slow that thing down or you're gonna have a wreck." Defendant replied with "a few choice words." Defendant "sped on up the street," across Highway 7 and out of sight. Jolene telephoned the sheriff's office.

Lynn Grobe overheard the verbal exchange between his wife and Defendant. Lynn got into his automobile and pursued Defendant north out of Warsaw. Arriving at the crash site, Lynn saw Defendant's automobile "upside down in the ditch." Shortly afterward, an ambulance and Trooper Leland Burnett of the Missouri State Highway Patrol arrived.

An emergency medical technician with the ambulance determined Ms. Turner was dead at the scene.

Trooper Burnett saw Defendant on the ground near the overturned automobile. Burnett noted Defendant "smelled of intoxicants like he'd been drinking." Defendant's eyes were "watery, blood-shot, appeared to be dilated." Asked about Defendant's speech, Burnett testified: "He was very excited. He was using profanity, yelling and then he'd get quieter and mumble to himself.... His speech was slurred." A "blood test" performed on a specimen drawn from Defendant at a hospital at 8:55 p.m., some 86 minutes after the crash, showed an "alcohol content" of .08 percent.

Burnett described the road where the crash occurred as a "rural, blacktop road." The surface was dry. The speed limit was 55 miles per hour. Burnett observed sand and gravel on the road "along the edge." A "tire mark" on the road led to the overturned car.

After the crash, a motor vehicle inspector for the Missouri State Highway Patrol inspected the vehicle Defendant was driving. The brake fluid and tire tread depth were adequate. The steering mechanism was working. The brake pads, rotors and brake lines would have passed inspection.

Corporal David Holt of the Missouri State Highway Patrol, an "accident reconstructionist" whose expertise was unquestioned by Defendant, investigated the crash and testified as to how it occurred. At the site where

Defendant's vehicle left the road and overturned, the road curves to the east (right) for a northbound vehicle. Corporal Holt calculated the "critical speed"—the maximum speed at which Defendant's northbound automobile could have traveled through the curve and remained in the northbound lane—was "a fraction less than 45 miles per hour." Holt computed the speed of Defendant's vehicle as it crossed the center of the road into the southbound (west) lane at 56.7 miles per hour. The only sign of braking detected by Holt was just before the front driver's side wheel left the west edge of the pavement. Summarizing his findings, Holt testified:

> My opinion the accident occurred as the north bound vehicle was attempting to make a right-hand curve and was traveling too fast to safely do so. The vehicle skidded off the left-hand side of the road, struck a dirt embankment with the left-front wheel, the collision with the left front wheel pushed the wheel back into the sheet metal of the automobile cutting a hole in the tire. The tire went flat. The vehicle went up the dirt embankment, came back down and overturned, and came to rest on the highway.

Section 562.016.4, RSMo 1986, reads:

> A person "acts recklessly" or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

In arguing the evidence was insufficient to show he acted recklessly, Defendant emphasizes there was no road sign south of the curve to warn an approaching motorist that the curve could not be negotiated at a speed above 45 miles per hour. Additionally, Defendant points out that witnesses Burnett and Holt admitted a manufactured speedometer may register 55 miles per hour when an automobile is traveling 56.7 miles per hour. Therefore, says Defendant, "The question thus posed is whether operating a motor vehicle at the speed limit, 55 miles per hour, on a roadway with no posted speed limit, no curve signs, no recommended speeds, and

under normal driving conditions, constitutes the operation of a vehicle in a reckless manner."

Defendant maintains the accounts of his driving in Warsaw, minutes before the crash, narrated by witnesses Hoff, Baker and Jolene Grobe, were improperly admitted by the trial court and should not be considered in this appeal in determining whether the evidence was sufficient to support a finding of recklessness. Defendant characterizes the driving described by those witnesses as "antecedent conduct." For convenience, so shall we.

Neither of Defendant's points relied on assigns error in the admission of evidence of his antecedent conduct. Consequently, no question of admissibility is preserved for review. *State v. Harris*, 824 S.W.2d 111, 114[3] (Mo.App.E.D.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 51 (1992); *State v. Adams*, 808 S.W.2d 925, 930[3] (Mo. App.S.D.1991). We therefore need not consider whether Defendant voiced adequate and timely objections to such evidence, or any of it, at trial.

The law governing Defendant's first point is set forth in *State v. Feger*, 340 S.W.2d 716 (Mo.1960). There, the accused was convicted of manslaughter based on culpable negligence in the operation of an automobile causing a three-car collision and the death of a passenger in the automobile his vehicle struck. The testimony recounted his conduct for the two-hour period immediately preceding the crash. He drank a beer, then started driving to a tavern twelve miles distant. En route, he stopped for another beer, then proceeded on at speeds around 100 miles per hour. At the intended destination, he decided to go elsewhere, and drove on at like speed. He stopped again for another beer. Thereafter, his vehicle slid into a ditch rounding a curve. After another motorist helped him extricate it, he drove to a club and had another beer. He then started back; a companion asked to drive because the accused was going too fast. The accused allowed the companion to drive, but then complained he was not driving fast enough. After stopping at a tavern, the accused drove away alone. Two or three miles later, at 85

to 90 miles per hour, he passed an automobile, then cut back into the right lane and ran off the pavement. He continued without reducing speed and passed another vehicle. Again, he ran off the right side of the road, then swerved across into the left-hand lane and forced two vehicles in that lane off the road. A few hundred yards later, the fatal collision occurred. There was evidence to support a finding that the accused's vehicle struck the rear of an automobile ahead of him going the same direction, deflecting it into the opposite lane where it collided head-on with a third vehicle.

Rejecting the accused's contention that the evidence was insufficient to support the conviction, the Supreme Court of Missouri noted the accused drove while drinking, drove at speeds around 100 miles per hour, and passed other vehicles without sufficient control of his automobile to avoid endangering others on the highway. *Id.* at 721. The Supreme Court said:

> We conclude . . . the jury reasonably could find that the conduct and acts of [the accused] were such as indicated an utter indifference for human life, and that he knew or should have known that such conduct endangered human life, and that there was substantial evidence that [he] was guilty of culpable negligence in the operation of his automobile at the time and place of the occurrence which resulted in the death of [the victim].

*Id.* at 722.

The opinion continued:

> An essential element of the offense . . . consisted of the state of mind; that is, negligent conduct of such reckless character as to indicate "utter indifference for human life." Only rarely if ever is there direct proof of one's state of mind. This essential element may, however, be established from facts and circumstances from which it reasonably may be inferred that the conduct of the accused was actuated by a reckless disregard for the consequences of his negligent acts and an utter indifference for human life. The conduct of [the accused] shown by the evidence . . . tended to establish a series of connected negligent acts constituting a general course of action

which had a direct bearing on his attitude and state of mind evidencing gross and culpable negligence, and therefore the evidence was relevant to an essential element of the State's case. . . . From the time [the accused embarked] he started the incident or the connected course of events which culminated in the death of [the victim], and evidence of his method of driving during the entire course of events was relevant and material to the issue of whether the accident resulted from ordinary negligence on his part or from his culpable negligence.

*Id.* at 725–26 (citations omitted).

Because *Feger* held evidence of the accused's driving during the two hours leading up to the fatal collision was relevant and material to the issue of whether he was culpably negligent in causing it, we hold the evidence of Defendant's antecedent conduct, minutes before the crash, is relevant and material to whether he was acting recklessly, as defined by § 562.016.4, *supra*, at the time of the wreck which claimed Ms. Turner's life.

■ Defendant drove past two stop signs without slowing down; he drove at least ten miles per hour above the speed limit on Polk Street, a residential area where, according to witness Baker, children play; he turned a corner without reducing speed, throwing gravel and narrowly missing a parked car; he swerved "all over the road" and rebuked Jolene Grobe when she warned him to slow down.

Additionally, Defendant had unquestionably been drinking before he drove. At the crash site, Defendant told Trooper Burnett he had been drinking at a bar. Defendant's eyes were watery, bloodshot and dilated; his speech was slurred. The "blood test" showed an alcohol content of .08 percent. Jurors could have reasonably inferred the alcohol content dropped during the interval between the crash and the drawing of the blood specimen. *See, State v. Harris,* 670 S.W.2d 73, 79 (Mo.App.W.D.1984).

Corporal Holt's opinion that Defendant drove into the curve at excessive speed is uncontradicted. Existing conditions determine whether speed is excessive. *Powell v.*

*Watson,* 526 S.W.2d 318, 326[9] (Mo.App. 1975). A driver's speed can be excessive even though it does not exceed the speed limit. *Arnone v. Hess,* 722 S.W.2d 355, 357 (Mo.App.W.D.1987).

On the date of the crash, Defendant was five days short of age 22. Photographs of the crash site showing the sharpness of the curve were received in evidence and have accompanied the record here. Jurors could have reasonably found Defendant realized there was a substantial risk that he could not negotiate the curve at the speed he was traveling, but consciously disregarded the risk by maintaining speed until it was too late to avoid the calamity. As reported earlier, Defendant's vehicle slid across the southbound lane and there was no evidence of braking until the left front wheel was leaving the west edge of the pavement.

The State did not have to prove Defendant knew he could not hold the road at the speed he was driving. Section 562.016.4, *supra,* required the State to prove only that Defendant *consciously disregarded a substantial and unjustifiable risk* that his vehicle would leave the road if he attempted to drive through the curve at that speed, and such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in that situation. *State v. Applewhite,* 771 S.W.2d 865, 868 (Mo.App. E.D.1989). As observed in *Applewhite,* the crash itself demonstrated the risk and the consequences of disregarding it. *Id.* at 868.

We hold Defendant's antecedent conduct (including drinking), coupled with his excessive speed at the crash site, was sufficient to support a finding that he acted recklessly as defined by § 562.016.4, and thereby caused Ms. Turner's death. Defendant's first point is denied.

His second point challenges the sufficiency of the amended information on which the case was tried. Excluding its formal parts, the information reads:

> [D]efendant, in violation of Section 565.060, RSMo, committed the class C felony of assault in the second degree ... in that on or about May 14, 1991, in the County of Benton, State of Missouri, the defendant recklessly caused serious physical injury to Deborah Jean Turner, by recklessly operating a motor vehicle in such a manner that said automobile wrecked, which resulted in the death of Deborah Jean Turner.

Defendant says the information is deficient in that it fails to state how or in what manner he acted recklessly. In Defendant's words: "[The information] does not state how [Defendant's vehicle] wrecked, why it wrecked or in what way Defendant operated it to make it wreck. It merely states that he operated it and it wrecked." Defendant cites four cases which, according to him, demonstrate that had the prosecutor undertaken to charge him with careless and imprudent driving, the information would have failed to state such offense. Consequently, reasons Defendant, the information should be held insufficient to charge assault in the second degree by acting recklessly in the operation of a motor vehicle.

The State responds by directing us to *State v. Devall,* 654 S.W.2d 172 (Mo.App. W.D.1983). There, the information charged the accused with manslaughter by culpable negligence in operating an automobile, thereby causing the victim to die. The accused's contention that the information was insufficient because it pled no facts was rejected. *Devall* relied on *State v. Beck,* 449 S.W.2d 608, 611[2] (Mo.1969), which held: "It is not essential that an information charging manslaughter by culpable negligence in the operation of a motor vehicle set out in detail the particulars of which such carelessness, recklessness and culpable negligence consist." *Devall,* 654 S.W.2d at 175.

■ Here, we deal with neither manslaughter nor careless and imprudent driving, but instead with assault in the second degree by recklessly causing serious physical injury to another person.

This Court recently decided a case in which the accused was convicted of two counts: involuntary manslaughter and assault in the second degree. *State v. Reichert,* 854 S.W.2d 584 (Mo.App.S.D.1993). The charges arose from a collision between an automobile operated by the accused and an automobile occupied by the two victims. The information alleged the accused caused

the death and injury by failing to take any action to avoid striking the victims' vehicle. *Id.* at 604. The accused filed a motion to dismiss or for a bill of particulars. The trial court denied the motion to dismiss but granted the request for a bill of particulars. The State filed a bill of particulars; the accused did not contest its sufficiency. *Id.* On appeal, the accused assigned error in the denial of the motion to dismiss, insisting the information was insufficient and the trial court thereby lacked jurisdiction. *Id.* The accused maintained the information was deficient because it did not plead the time and means for avoiding the collision after the accused saw or could have seen the victims' vehicle. *Id.* at 605.

This Court held the information sufficient, relying on *Beck* and *Devall,* and also on *State v. Parkhurst,* 845 S.W.2d 31 (Mo. banc 1992). In *Parkhurst,* the Supreme Court of Missouri addressed a post-verdict claim that the information was insufficient. *Parkhurst* held:

> When the issue is raised for the first time after verdict, the ... information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. In either event, a defendant will not be entitled to relief based on a post-verdict claim that the information ... is insufficient unless the defendant demonstrates actual prejudice.

*Id.* at 35[7–9] (footnote omitted).

■ Here, the record is bare of any attack on the information by Defendant before trial. There is likewise no indication that Defendant filed a motion for a bill of particulars. In the absence of such a motion, any court is entitled to assume that an accused is satisfied the information, as filed, fully and acceptably advises him as to the facts charged. *Sours v. State,* 692 S.W.2d 2, 3 (Mo.App.S.D.

1985); *State v. Davis,* 624 S.W.2d 72, 76–77[5] (Mo.App.W.D.1981).[2]

At the close of the State's evidence, Defendant filed a motion for judgment of acquittal. Its only reference to the information was that it "fails to state an offense and fails to state a plain, concise and definite written statement of the essential facts constituting assault in the second degree." Minutes after the verdict, Defendant filed a motion to dismiss the information, setting forth for the first time the grounds asserted in his second point. Because of Defendant's belated attack on the information, we hold his second point is controlled by *Parkhurst.*

Applying *Parkhurst,* we note the information here named the crime and cited the statute defining it, stated the date and place of the crime, identified the victim, and alleged Defendant recklessly caused the victim serious physical injury by recklessly operating a motor vehicle in such a manner that it wrecked, resulting in the victim's death. By any reasonable construction, the information charged the crime for which Defendant was tried and convicted. Had he been acquitted, the information was sufficient to support a plea of former jeopardy.

Furthermore, Defendant has demonstrated no actual prejudice. Defense counsel's comments during the pretrial conference, his opening statement, and his questioning of witnesses compellingly demonstrate careful preparation and complete awareness of the incriminating evidence and the State's theory of recklessness.

Consistent with *Reichert,* 854 S.W.2d at 605–06, we reject Defendant's challenge to the sufficiency of the information.

Judgment affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

**2.** A holding in *Davis* on an unrelated point was overruled by *State v. Reynolds,* 819 S.W.2d 322, 325–27 (Mo. banc 1991).