In the INTEREST OF N.A.G.

David W. KIERST, Jr., Juvenile Officer, Respondent,

v.

N.A.G., Juvenile, By Parents, Appellant.

No. WD 49458.

Missouri Court of Appeals, Western District.

Aug. 8, 1995.

Laura Higgins Tyler, Morrison & Hecker, Kansas City, for appellant.

Lori L. Stipp, Kansas City, for respondent.

Before KENNEDY, P.J., and SMART and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant, N.A.G., a juvenile, appeals from the juvenile court's determination that N.A.G. recklessly caused serious physical injury to Robin S. McDonald when N.A.G.'s automobile, while being driven by N.A.G., struck Mr. McDonald in the right pelvis and knee. N.A.G. contends that there was insufficient evidence to support the findings (1)

that Mr. McDonald's injury was sufficiently serious to constitute "serious physical injury" as defined by § 565.060, RSMo Supp.1993 [1], and (2) that N.A.G. drove recklessly. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to Mr. McDonald, he was driving his mother's Honda eastbound on Interstate 470 in southern Kansas City on February 11, 1994, when another car began following him. The driver of the other car was N.A.G.; he had a sole passenger, Joshua Jacques. Mr. McDonald continued to drive and ultimately pulled into the driveway of his parents' home in Lee's Summit, Missouri. N.A.G.'s car followed him down his parents' street. Mr. McDonald testified that he then got out of his car and ran toward N.A.G.'s car, in the street, with a Gatorade bottle in his hand. N.A.G. briefly stopped in front of the McDonald house, then drove past it, turned around in a driveway north of the McDonald house, and came back along the edge of the street, toward the McDonald house. Mr. McDonald was standing one or two feet out into the roadway. Mr. McDonald stated that N.A.G.'s car swerved suddenly when it reached him and the right front passenger side of the car struck Mr. McDonald on his right pelvis and right knee.

N.A.G. tells a somewhat different story. N.A.G. testified that he was driving on Interstate 470 when Mr. McDonald's car tried to merge into his lane between his car and another car. N.A.G. claimed that Mr. McDonald was driving erratically and that he and Mr. Jacques thought Mr. McDonald was drunk. N.A.G. stated that they followed Mr. McDonald to the home of his parents so that they "could see where [Mr. McDonald] was going to try to remember the number to find out just so [they] could tell someone about it." Mr. Jacques testified that they intended to get Mr. McDonald's address so they could report his erratic driving to the police. N.A.G. admitted to driving at high speeds in order to follow Mr. McDonald.

Mr. Jacques testified that N.A.G. drove their car past the McDonald home, but had to turn around because the street was a dead end. As they returned down the street, Mr. Jacques said Mr. McDonald came out into the street, holding something in his hand above his head and hollering at them. Mr. McDonald then ran towards them and "looked like he was going to throw whatever he had in his hand at the car." Mr. Jacques ducked down in his seat because he was afraid Mr. McDonald was going to throw something through the window. The car "swerved around a little bit" and Mr. Jacques stated that he heard a cracking noise that sounded like something hard hitting the windshield. Later, they discovered a chip in the windshield. Mr. Jacques wasn't sure what had hit the car—"[i]t could have been whatever the man had in his hand or it could have been the man himself." After he heard the crack, Mr. Jacques turned around and saw Mr. McDonald walking towards his car.

N.A.G. admitted that he did not stop the car to check on Mr. McDonald and that neither he nor Mr. Jacques reported the incident to the police. Instead, they drove to a car wash, stopped to wash the car and then went to a friend's house.

The evening of the accident Mr. McDonald went to the Lee's Summit Hospital. The medical record from the evening of the accident reflected that Mr. McDonald complained of right rib pain, but no bruising or deformity was noted. In addition, the record reflected that the paramedics observed seizure activity in Mr. McDonald's arms. Mr. McDonald testified that his injuries also included contusions to the right side of his body from his ribs down to his knees. He further stated that he was on crutches for four days and that as of the date of the trial, two months after the incident, his right knee sometimes caused him a lot of pain and sometimes would not support his weight. Mr. McDonald also complained of pain at the base of his thumb.

Detective Lance Stokes testified that N.A.G.'s car had marks on it consistent with the car having hit a person. He said that the marks, caused by either a hand print or possibly an object in the hand, extended from

1. All statutory references are to the Revised Stat-    utes of Missouri 1986 unless otherwise indicated.

the front right quarter panel of N.A.G.'s vehicle up along the hood of the car, up underneath the windshield wiper blade, and then up onto the top of the car, above the passenger seat. The marks left a scratch that extended onto the windshield. Latent prints began on the windshield of N.A.G.'s car and continued toward the back of the car, turning at a 90 degree angle away from the car. Detective Stokes also testified that a fabric imprint on N.A.G.'s car was made by impact with a fixed object.

Following the trial, the court sustained the allegations against N.A.G. The court entered its Amended Judgment on May 3, 1994. This appeal followed.

## II. *STANDARD OF REVIEW*

■ N.A.G. claims that there was insufficient evidence to support the findings: (1) that Mr. McDonald sustained "serious physical injury" as that term is used in § 565.060, or (2) that N.A.G. acted recklessly. In determining whether there was sufficient evidence to support the juvenile court's findings, we examine the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence. We disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc), *cert. denied*, — U.S. —, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). The appellate court's function is not to weigh the evidence but to determine whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Coates*, 862 S.W.2d 418, 420 (Mo.App. 1993).

## III. *THE RECORD SUPPORTED THE FINDING OF SERIOUS PHYSICAL INJURY*

The term "serious physical injury" as used in § 565.060 is defined in § 565.002(6) as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." *See also* § 556.061(28), RSMo Supp.1993. The parties

agree that there was no evidence of a substantial risk of death or of serious disfigurement. However, they disagree as to whether the injury to Mr. McDonald's knee constituted a protracted impairment of the function of that part of the body.

■ There is no minimum degree of trauma which must be inflicted to satisfy the portion of the statutory definition dealing with protracted loss or impairment. *State v. Briggs*, 740 S.W.2d 399 (Mo.App.1987) (construing section 556.061(26)). The question is whether the injuries inflicted in the assault, viewed objectively, are of a degree of severity sufficient to raise a legitimate concern either that the victim could expire or that the victim could suffer more than a momentary impairment of a bodily function. *State v. Johnson*, 770 S.W.2d 263 (Mo.App.1989). Impairment has been defined as:

"the act of impairing or the state of being impaired." "Impairing" and "impaired", in turn, are defined ... as "to make worse; diminish in quantity, value, excellence or strength; damage, lessen." The word "function" is defined ... as "the action to which a person or thing is specifically fitted, used or responsible or for which a thing exists."

*State v. Mace*, 665 S.W.2d 655, 662 (Mo.App. 1984) (quoting Webster's Third New International Dictionary (1971)).

■ The functions of the leg include ambulation and support while standing. *State v. Baker*, 859 S.W.2d 805, 813 (Mo.App.1993) (distinguishing mere aches in leg in cold or rainy weather from impairment of the function of the leg when used for movement or standing). Here, there is no question that Mr. McDonald suffered impairment of the function of his knee. Mr. McDonald stated that he was on crutches for four days and continued to have problems with his right knee. Thereafter, Mr. McDonald continued to experience pain in his right knee and, at times, this knee would not support his weight.

The issue in this case is whether Mr. Baker's impairment could be considered "protracted". "Protracted loss or impairment of the function of any bodily member or organ means something short of permanent, but

more than a short duration. What is 'protracted' depends on the circumstances of each case." *State v. Stewart*, 811 S.W.2d 805, 808 (Mo.App.1991); *State v. Fitzgerald*, 778 S.W.2d 689, 692 (Mo.App.1989).

Mr. McDonald testified that he continued to experience pain and found that, at times, his knee would not support his weight as late as two months after the incident. N.A.G. casts doubt on the merits of this claim of continuing injury, noting that no further need for medical treatment was shown. We find, however, that the seriousness of the knee injury was an issue of credibility for the trial court to decide. It is evident from the judgment that the trial judge believed Mr. McDonald's testimony that he continued to experience pain and loss of function two months after the accident. Such evidence, if believed, was sufficient to support a finding of protracted impairment.[2]

For these reasons, we find that the trial court acted within its discretion in finding that Mr. McDonald suffered a protracted impairment of his knee and that this impairment constituted serious physical injury as that term is used in § 565.060.

## IV. THE EVIDENCE SUPPORTED A FINDING THAT N.A.G. ACTED RECKLESSLY

N.A.G. also claims that there was insufficient evidence to support the finding that he acted recklessly. A person acts recklessly "when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4.

■ Direct proof of a required mental state is seldom available and such intent is usually inferred from circumstantial evidence. *State v. Brown*, 660 S.W.2d 694 (Mo. 1983). In determining whether conduct is reckless, the court may take into account the surrounding circumstances leading to the act.

*State v. Coates*, 862 S.W.2d 418 (Mo.App. 1993) (motorist's driving conduct before crash was relevant and material to whether motorist was acting recklessly at the time of the accident). Thus, the defendant's "mental state can be determined from his testimony, evidence of his conduct before the act, the act itself, and his subsequent conduct." *State v. Runyon*, 619 S.W.2d 955, 957 (Mo.App.1981).

■ Taken in the light most favorable to the judgment, the evidence shows that N.A.G. harassed Mr. McDonald and admitted to driving at high speeds in order to follow Mr. McDonald to his parent's home. N.A.G. knew that Mr. McDonald was in the roadway as N.A.G. drove past but, instead of driving on the opposite side of the road or turning his car away from Mr. McDonald, N.A.G. swerved toward Mr. McDonald, hitting him with the front passenger side of the car. N.A.G. did not stop to see whether Mr. McDonald was hurt and did not report the incident to the police. Rather, N.A.G. drove to a car wash, washed the car and then went to a friend's house.

This evidence supported the trial court's finding that N.A.G. acted recklessly by consciously disregarding the risk that Mr. McDonald would be injured when N.A.G. swerved at and hit Mr. McDonald with his car and then left the area without stopping to see whether Mr. McDonald had been hurt. *See State v. Moseley*, 705 S.W.2d 613, 617 (Mo.App.1986) (defendant acted recklessly since he consciously disregarded the risk that someone would be injured by his firing of a gun twice at a door after he suspected someone was on the other side and then leaving before checking to see if someone had been hit).

For the reasons stated above, the decision of the trial court is affirmed.

All concur.

---

**2.** *See State v. Quinn*, 717 S.W.2d 262, 264–65 (Mo.App.1986) (at time of trial, three months after shooting, victim testified that he continued to have pain in his foot and that he was not able to do what he could before the shooting); *State v.*

*Trimmer*, 849 S.W.2d 725 (Mo.App.1993) (pain and loss of sleep for at least one month and continued itching from burn scars at time of trial nearly four months after assault).