**Robert SANDERS, Deceased, by Martha Sanders Carmean, Dependent, Claimant–Appellant,**

v.

**ST. CLAIR CORPORATION, Employer–Appellant,**

and

**Gulf Insurance Company, Insurer–Respondent.**

Nos. 20697, 20737.

Missouri Court of Appeals, Southern District, Division One.

Feb. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 24, 1997.

William D. Powell, Daniel, Clampett, Powell & Cunningham, L.L.C., Springfield, for claimant–appellant.

John Wise, Whiteaker & Wilson, P.C., Springfield, for employer–appellant, and insurer–respondent.

GARRISON, Judge.

These consolidated appeals from an award of the Labor and Industrial Relations Commission (Commission) raise two issues: (1) whether the Commission erred in denying workers' compensation benefits for permanent partial disability to a dependent of an employee who sustained compensable injuries but died, from unrelated causes, before reaching maximum medical improvement from those injuries; and (2) whether the Commission erred in calculating the applicable compensation rate for the employee's claim for temporary total disability.

Robert Sanders (Employee) installed home siding as a subcontractor for the St. Clair Corporation (Employer).[1] His compensation from Employer was based on the total amount of siding installed, but Employer withheld 10% of the amounts payable for each job to cover workers' compensation premiums on Employee and his helpers.[2] Employee was responsible for paying his helpers out of the amounts received from Employer.

Employee was injured in two separate incidents while working for Employer. On October 2, 1990, he fell from a scaffold, injured his back, and received temporary total disability benefits from October 3, 1990 through October 8, 1990. He then returned and continued working for Employer until December 13, 1990, when he again injured his back when he stepped on a brick at a job site and fell. A local physician referred Employee to Dr. Briggs, a neurosurgeon, after treating him conservatively.

Dr. Briggs performed a laminectomy and diskectomy on January 21, 1991 after diagnosing a herniated L4–5 disc, fracture of the back of the vertebral body, and degenerative disc disease. Employee continued to experience pain and had a second operation on February 5, 1991, which also failed to relieve his symptoms. Employee was diagnosed with a brain tumor on April 17, 1991, and as a result of complications from his treatment for that condition, he was placed on anticoagulants.

Dr. Frank Sundstrom, an orthopedist, saw Employee on August 15, 1991 at Employer's request. Dr. Sundstrom reported that it was "difficult to sort out the symptoms which may be related to his 4th lumbar disc situation and its two surgeries," but that "[f]rom the information I have at hand, I would hazard an estimate that he has a 10% impairment of function of the whole person related to his 4th lumbar disc problem." In responding to a follow-up letter from Employer's insurer, Dr. Sundstrom said, "My impression is that he has a 10% impairment of function of the whole person."

In August, 1991, he was again seen by Dr. Briggs with continuing pain in his left leg. Dr. Briggs suspected a recurrent herniated disc and believed another myelogram was needed to complete his evaluation, but that test was not possible because of the anticoagulant medication Employee was taking. Dr. Briggs' diagnosis at that time was recurrent left lower extremity radiating pain which resulted from either chronic nerve root scarring or recurrent herniated disc at L4–5

---

1. The parties stipulated that Mr. Sanders was an employee under the Missouri Workers' Compensation Law.

2. No issue is raised about the prohibition of § 287.290, RSMo 1986, against any part of the cost of workers' compensation insurance being assessed against, collected from, or paid by any employee.

on the left side. When Dr. Briggs last saw Employee in January, 1992, he noted that there had been no change in his back and left leg.

Dr. Briggs testified by way of deposition taken on April 9, 1992. At that time he had not released Employee from his care, and he gave his opinion that Employee was then totally disabled as a result of his back and left leg complaints which were caused by the December, 1990 fall. When asked if there was any additional treatment available for these complaints, he indicated that if his other conditions (blood clots caused by the cancer treatment, and anti-coagulant medication) would allow, a myelogram could help determine if additional treatment would be helpful.

Employee died on May 26, 1992 from cancer. The parties agree that his death was not causally related to either of the falls. Employee's two workers' compensation claims were then pursued by his surviving spouse and dependent, Martha Sanders, nee Carmean (Claimant).

Following his death, Dr. Janie Vale, an occupational medicine specialist, reviewed Employee's medical records, his deposition, and Dr. Briggs' deposition, at Claimant's request. Her deposition was introduced at the hearing before the Administrative Law Judge (ALJ). When asked if she had "an estimation" about the permanent partial disability Employee "would have suffered concerning his low back and low back injuries, had he lived," she gave her opinion that he had sustained "an approximate 30 to 35 percent permanent partial impairment of the total body as related to the two work-related incidences." When asked if Employee was totally disabled when he died, Dr. Vale said that he would have been unable to work for at least one year after the second surgery in February, 1991, but that the goal thereafter would have been for him to return to a lighter form of employment. She said, however, that his recovery was delayed because of the complications from the treatment for his cancer. She admitted that she had not personally examined Employee, and that her opinions were arrived at by reviewing his medical records and the deposition testimony.

After consolidating these claims, the ALJ found that the Employee's expected residual disability was 30% of the body as a whole, and that, pursuant to § 287.230,[3] Claimant was entitled to permanent partial disability benefits based on that finding. The ALJ also applied § 287.250.1(4), RSMo Cum.Supp. 1992, in calculating Employee's average weekly earnings for the purposes of determining compensation benefits.

Employer appealed the ALJ's findings to the Commission, seeking a review of the ALJ's award of permanent partial disability benefits. It also sought a review of the ALJ's application of § 287.250, as amended in 1992, rather than the 1986 version of that statute in arriving at the compensation rates, and contended that Employee's temporary total disability benefits should have been restricted to the statutory minimum. As a result, Employer sought a credit for alleged overpayments.

The Commission held that application of the later version of § 287.250 was error, but that additional benefits for temporary total disability were owing. It also reversed the ALJ, and held that Claimant was not entitled to benefits for permanent partial disability. Each of the parties appeal from the Commission's award.

---

3. Section 287.230, RSMo 1986, provides:
    1. The death of the injured employee shall not affect the liability of the employer to furnish compensation as in this chapter provided, so far as the liability has accrued and become payable at the time of the death, and any accrued and unpaid compensation due the employee shall be paid to his dependents without administration, or if there are no dependents, to his personal representative or other persons entitled thereto, but the death shall be deemed to be the termination of the disability.

2. Where an employee is entitled to compensation under this chapter for an injury received and death ensues for any cause not resulting from the injury for which he was entitled to compensation, payments of the unpaid accrued compensation shall be paid, but payments of the unpaid unaccrued balance for the injury shall cease and all liability therefor shall terminate unless there are surviving dependents at the time of death.

## CASE NO. 20697

■ In appealing the denial of her claim for permanent partial disability benefits as a result of Employee's injuries, Claimant alleges that the Commission erroneously concluded that because Employee's injuries had not reached maximum medical improvement prior to his death, she was only entitled to unpaid benefits for temporary total disability. She contends that this conclusion was erroneous as a matter of law, and that a correct application of § 287.230.2's provision for an award of unpaid and unaccrued benefits would have entitled her to an award for what she characterizes as Employee's permanent partial disability. In response, Employer argues that the decision was based on Claimant's failure to establish the nature and extent of any permanent partial disability and, therefore, was a determination of fact based on the Commission's assessment of the medical evidence.

■ There is a different standard of review in workers' compensation cases, depending on whether the Commission decided the case as a matter of law or of fact. Decisions which are clearly interpretations or applications of law, rather than determinations of fact, are reviewed by us for correctness without deference to the Commission's judgment. *Simmerly v. Bailey Corp.*, 890 S.W.2d 12, 14 (Mo.App. S.D.1994). "Findings of ultimate facts reached through application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law" which are reviewable for misstatement or misapplication. *Id.*

■ On the other hand, the Commission is the sole judge of the credibility of witnesses and the weight and value of the evidence. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 470–71 (Mo.App. S.D.1992). On such questions, the reviewing court may not substitute its judgment on the evidence for that of the Commission. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). Under this standard of review, the Commission's award may be set aside only if there is no substantial and competent evidence to support it or if its findings are clearly contrary to the overwhelming weight of the evidence. *Id.*

Contrary to the premise of Claimant's point relied on, we do not interpret the Commission's award as holding that, as a matter of law, she was not entitled to permanent partial disability benefits as unpaid, unaccrued compensation pursuant to § 287.230.2 because of the failure to demonstrate maximum medical improvement from Employee's work-related injuries prior to his death. Rather, the Commission noted that permanent partial disability means a disability which is permanent in nature and partial in degree, citing § 287.190.6. It also noted, correctly, that Missouri courts have routinely required that the permanent nature of an injury be shown to a reasonable certainty, and that such proof may not rest on surmise and speculation. *See Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703 (Mo.App. W.D.1973).

The Commission noted that Dr. Sundstrom gave no opinion about permanency; Dr. Briggs testified that Employee had not reached maximum medical improvement and gave no opinion about residual disability; and Dr. Vale's opinion was based on an assumption of improvement if Employee had not suffered from cancer. The Commission then concluded that "[a]ny award of permanent disability is inappropriate for lack of requisite proof." It is clear that the Commission denied permanent partial disability benefits based on the failure to prove the nature and extent of such disability, rather than as a matter of law based on a conclusion that, under § 287.230.2, maximum medical improvement must have been reached prior to death. Our conclusion in this regard is further supported by the fact that Employer sought relief from the Commission based on the lack of competent substantial evidence to support a finding of permanent partial disability, rather than on the basis that Claimant was not entitled to recover such benefits as a matter of law.

The Commission did hold that temporary total disability awards are to be granted only until the employee can return to work, and are not intended to encompass disability after the condition has reached maximum medical improvement. The Commission cited *Williams v. Pillsbury Co.*, 694 S.W.2d 488,

489 (Mo.App. E.D.1985), in support of that proposition. It also held that there was no evidence, within a degree of reasonable certainty, that Employee had achieved maximum medical improvement, and consequently temporary total disability benefits should be awarded to the date of his death. The findings concerning maximum medical improvement, however, were made with reference to whether the temporary total disability benefits should have concluded prior to Employee's death, not whether Claimant was entitled to benefits for permanent partial disability as unpaid, unaccrued compensation. If it had held that Claimant was not entitled to permanent partial disability benefits as a matter of law because of the failure to prove maximum medical improvement, there would have been no reason for it to discuss the lack of proof of permanent partial disability, or the reasons it did not give weight to the evidence concerning that subject.

■ The Commission's award was consistent with the premise that a party claiming benefits under the Workers' Compensation Law has the burden of proving not only causation of the injury, but also that disability resulted and the extent of such disability. *See Carter v. Frito–Lay,* 913 S.W.2d 341, 343 (Mo.App. E.D.1995). It is in the exclusive province of the Commission to determine matters of disability. *Id.* In doing so, it is the sole judge of credibility, has the discretion to weigh and value the evidence, and may disbelieve the medical evidence offered. *Id.*

■ We recognize, as argued by Claimant, that pursuant to § 287.800 the Workers' Compensation Law should be liberally construed in furtherance of the purpose of enabling employees to receive compensation for injuries arising out of and in the course of employment. *See State ex rel. Doe Run Co. v. Brown,* 918 S.W.2d 303, 307 (Mo.App. E.D. 1996). This principle, however, does not authorize the allowance of a claim lacking an essential element required by law. *Freeman v. Callow,* 525 S.W.2d 371, 376 (Mo.App. S.D. 1975).

The denial of benefits to Claimant was based on the lack of requisite proof of a permanent partial disability, instead of a conclusion that, as a matter of law, she was not entitled to such benefits because of the failure to demonstrate maximum medical improvement prior to Employee's death. Claimant's point on appeal is, therefore, denied. In reaching this decision, we do not decide whether § 287.230.2 authorizes an award of permanent partial disability benefits where an injured employee dies from unrelated causes before he achieves maximum medical improvement from his work-related injuries.

## CASE NO. 20737

■ In the first of its points on this appeal, Employer contests the Commission's calculations of the average weekly wage and the compensation rate used in awarding temporary total disability benefits to Employee. It argues that a necessary element in such calculations was the number of days actually worked by Employee, but that there was no evidence of that in the record. Consequently, Employer argues that the applicable compensation rate should have been the statutory minimum of $40 per week.

The Commission determined that § 287.250(4), RSMo 1986, which applies the "300 day rule," was the applicable statute for the purpose of calculating Employee's annual earnings. In doing so, it determined that his gross earnings were $17,480.55, which consisted of the amounts paid to him by Employer, plus the deductions for workers' compensation premiums, minus the amounts he paid his helpers. None of those conclusions are contested by Employer on this appeal.

The Commission then concluded that Employee had worked 179 days prior to the December injury (the number of work days between the time Employee commenced working for Employer and the December injury, assuming a five-day work week). By dividing the gross earnings by the number of work days, the Commission arrived at a daily wage of $97.66, which, multiplied by 300 (pursuant to § 287.250(4), RSMo 1986), resulted in an average weekly wage of $563.42. Sixty-six and two-thirds percent of that, pursuant to § 287.170.1(3), RSMo 1994, resulted in

a compensation rate for temporary total disability of $375.61.

In this point relied on, Employer argues that there was no evidence to support the use of 179 work days in the equation and, therefore, Employee was only entitled to the statutory minimum of $40 per week. In support, it reminds us that a claimant has the burden of proving all of the material elements of the claim, and that includes sufficient proof for the Commission to determine the proper compensation rate. *See Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364, 368–69 (Mo. banc 1987).

In the instant case, the report of injury, filed by Employer on October 17, 1990, stated that it operated "year around" and that Employee worked five- to six-day weeks, earning a weekly wage of $800. Employer acknowledges these statements but argues that there was no evidence of the number of days worked by Employee between the October and December injuries. Claimant, however, testified that Employee was off work less than a week following the October injury, and that he missed no work from his return until the December injury. She testified that Employer expected Employee to start the job when the materials were delivered and stay on the job, every day, weather permitting, until it was done. In describing the days worked by Employee between the October and December injuries, she said that he "worked the days he was supposed to work." In a deposition taken prior to his death, Employee testified that he usually worked five to five and one-half days per week.

▆▆▆ Employer's point relied on is based on the lack of competent and substantial evidence of the number of days worked by Employee. As stated in *Davis v. Research Med. Ctr.*, 903 S.W.2d at 571, in reviewing to determine if the award is supported by sufficient competent and substantial evidence, we are to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. Based on that standard of review, we are unable to conclude that the Commission erred in arriving at the compensation rate applicable to this claim.

Employer's first point relied on is, therefore, denied.

In its second point on appeal, Employer contends that the Commission erred in finding that it was only entitled to a credit of $17.02 for the temporary total disability benefits paid for the October injury, and that it owed $3,395.35 in such benefits with respect to the December injury. Like the argument in its first point, the basis of Employer's contention in this point is that the Commission erred in utilizing a compensation rate of $375.61 rather than the minimum of $40 per week. Because we have determined that the Commission did not err in its determination of the compensation rate, this point is moot and is, accordingly, denied.

The Commission's award is affirmed.

BARNEY, P.J., and PREWITT, J., concur.